AO 91 (Rev. 11/11) Criminal Complaint                      AUSA Hanna Helwig (312) 469-6314

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

FILED
9/12/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA

v.

DAJON HARRIS

CASE NUMBER: 1:25-cr-00567

# CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about September 10, 2025 at Chicago, in the Northern District of Illinois, Eastern Division, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 1951(a) | obstructed, delayed, and affected commerce, and the movement of articles and commodities in commerce, by robbery, as "commerce" and "robbery" are defined in Title 18, United States Code, Section 1951(b), and committed and threatened physical violence to a person and property in furtherance of a plan and purpose to do something in violation of Title 18, United States Code, Section 1951(a) |

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

DUSTIN GOURLEY
Special Agent, Federal Bureau of Investigation

Pursuant to Fed. R. Crim. P. 4.1, this complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: September 12, 2025

*Judge's signature*

City and state: Chicago, Illinois

JEFFREY T. GILBERT, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, DUSTIN GOURLEY, being duly sworn, state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed for over 13 years. My current responsibilities include the investigation of violent crimes, including, among others, kidnaping, bank robbery, violations of the Hobbs Act, and the apprehension of violent fugitives.

2. This affidavit is submitted in support of a criminal complaint alleging that DAJON HARRIS has violated Title 18, United States Code, Section 1951(a). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging HARRIS with robbery affecting interstate commerce, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3. The statements in this affidavit are based on my personal knowledge and review of surveillance video footage, information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts, and my training and experience and the training and experience of other law enforcement officers with whom I have consulted.

1

## FACTS SUPPORTING PROBABLE CAUSE

4. In summary, according to reports from the victim and surveillance footage reviewed by law enforcement, on September 10, 2025, at approximately 11:17 a.m., a black male robbed a Brinks armored truck driver near 6 South State Street in Chicago, Illinois. Brinks records reflect that the robber took approximately $6,484.42 from the driver. According to reports from law enforcement officers and surveillance footage, the robber fled on foot and was encountered by law enforcement officers at a nearby Chicago Transit Authority ("CTA") station minutes after the robbery. Before receiving medical care for injuries sustained during the robbery, the robber identified himself to law enforcement officers as DAJON HARRIS.

### *Robbery of Armored Truck Driver*

5. On September 10, 2025, at approximately 11:17 a.m., a black male robbed a Brinks armored truck driver (the "Victim") near 6 South State in Chicago, Illinois. Law enforcement has interviewed the Victim and reviewed surveillance footage capturing the robbery.

6. Based on my experience, I know Brinks is an international corporation engaged in a variety of cash management and security services, including armored truck transport and cash processing, and operates in multiple states in the United States, including Illinois.

7. In sum, the Victim stated the following:

   a. Victim advised that he was working as an Armed Courier for Brinks on September 10, 2025. Victim recalled arriving at a store located at 6 South

State Street in Chicago, Illinois (hereinafter, "Store A"), for a scheduled cash pick-up. Victim explained that he met with the manager who gave him seven or eight bags of United States Currency ("USC"). Victim then placed the seven or eight bags into a black Brinks bag and exited Store A.

        b.      Victim recalled being approached by an individual (the "robber") after he exited Store A. Victim explained that the robber grabbed the black Brinks bag with both hands and attempted to rip the bag out of Victim's hand. Victim recalled struggling with the robber over control of the black Brinks bag. Victim explained that the robber released one of his hands and began punching Victim. Victim ultimately lost control of the black Brinks bag to the robber. At some point during the struggle, Victim was able to un-holster his firearm and discharge three rounds at the robber. After the robbery, Victim observed the robber travel west on foot on Madison Street with the black Brinks bag.

    8.      Law enforcement officers obtained surveillance footage from Store A, which captured the robbery and corroborated Victim's statement. According to Store A's footage, Victim entered Store A at approximately 11:12 a.m. and the robber followed him inside the store approximately one minute later. The footage depicts Victim exiting a large white truck labeled "Brinks," wearing a black bullet-proof vest, and carrying a black bag. The robber appeared to be a black male wearing black shoes, black pants, a black hooded sweatshirt with blue writing on the front, a black backpack, and a black face mask on his chin/mouth. The robber waited near the door while Victim went downstairs. As Victim exited Store A, the robber followed Victim.

3

At approximately 11:17 a.m., the footage depicts the robber grab the black bag in Victim's hand as Victim walked towards the Brinks truck, and Victim struggle to maintain control over the bag. During the struggle, the robber punched and shoved Victim. In response, Victim retrieved the firearm from his waistband and pointed it at the robber. The robber ultimately fled on foot with the black Brinks bag in his hand.

9. Law enforcement officers reviewed footage from a CPD Police Observation Device ("POD"), located near the intersection of Madison and State Streets, which also captured the robbery. The POD footage depicted the robber arriving at Store A at approximately 11:13 a.m. After the robbery, the robber can be seen fleeing north on foot on State Street, then west on Madison Street.

10. Law enforcement officers obtained and reviewed surveillance footage from the building located at 7 West Madison Street which depicted the robber dropping a black bag and then continuing westbound on foot on Madison Street. Shortly thereafter, law enforcement officers recovered the black bag dropped by the robber on Madison Street. The black bag was labeled "Brinks" and contained five clear bags of USC. Law enforcement officers recovered one additional clear bag of USC on the sidewalk near the black Brinks bag.

11. Law enforcement officers obtained and reviewed surveillance footage from the building located at 1 North Dearborn Street, which depicts the robber traveling west on Madison Street, then north on Dearborn Street towards the CTA

4

Blue Line station located near the intersection of West Washington Street and North Dearborn Street ("Washington Blue Line Station").

12. Law enforcement officers obtained and reviewed surveillance footage associated with the Washington Blue Line Station. The footage depicts the robber arrive at the station at approximately 11:18 a.m. wearing the same black shoes, pants, hooded sweatshirt, backpack, and mask; carrying a clear bag; and bleeding profusely. The robber ultimately dropped the bag and collapsed shortly thereafter. Law enforcement officers later recovered the clear bag dropped by the robber at the Washington Blue Line Station; it contained USC and was labeled "K5814487."

13. According to Brinks records, Victim received eight clear bags of USC from Store A that contained approximately $6,484.42 total. Each clear bag was labeled with a unique identifier (*i.e.*, "K5814487") and documented in Brinks records accordingly. Of the eight bags taken in the robbery, seven were recovered in the robber's flight path by law enforcement. Each clear bag recovered by law enforcement was labeled with a unique identifier that matched the identifiers of the bags stolen during the robbery according to Brinks records.

### *Identification of DAJON HARRIS as the Robber*

14. Law enforcement officers encountered the robber collapsed at the Washington Blue Line Station at approximately 11:20 a.m. Law enforcement officers asked the robber basic identification and health-related questions. The robber replied

5

that his name was DAJON HARRIS, and his date of birth was \*\*/\*\*/2002.[1] Based on a search of law enforcement databases, the officers obtained a photograph of DAJON HARRIS (DOB \*\*/\*\*/2002), compared it to the robber, and positively identified the robber as DAJON HARRIS. Law enforcement officers applied a tourniquet to HARRIS's arm and called for an ambulance. Medical personnel then took HARRIS to Northwestern Memorial Hospital.

15. According to Illinois Secretary of State records, HARRIS reported he was 5'9" tall, weighed 160 pounds, and that his date of birth was \*\*/\*\*/2002. Law enforcement officers compared HARRIS's Illinois driver's license photograph to surveillance footage of the robber and observed that they appear to depict the same individual (*see images below*).

  

*Driver's License Photo of HARRIS*     *Robber Inside Store A*     *HARRIS at Washington Blue Line Station*

---

[1] HARRIS provided his full date of birth to law enforcement, but it has been redacted throughout this affidavit for privacy.

6

## CONCLUSION

16. Based on the above information, I respectfully submit that there is probable cause to believe that on or about September 10, 2025, in the Northern District of Illinois, Eastern Division, DAJON HARRIS obstructed, delayed, and affected commerce, and the movement of articles and commodities in commerce, by robbery, and committed and threatened physical violence to the Victim in furtherance of a plan and purpose to rob the Victim, in violation of Title 18, United States Code, Section 1951(a).

FURTHER AFFIANT SAYETH NOT

DUSTIN GOURLEY
Special Agent, Federal Bureau of Investigation

SUBSCRIBED AND SWORN to before me telephonically
on September 12, 2025

Honorable JEFFREY T. GILBERT
United States Magistrate Judge

7